UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JIMENA MERCEDES UGSHA QUISHPE,
on behalf of herself and all others similarly
situated,

                             Plaintiff,

           -against-

LEMONS & OLIVES, INC.; TANJA
MANNHEIM; MARKO MANNHEIM; and
TOVIAS VALERO,

                         Defendants.
-----------------------------------------------------x

24-cv-8805

**COMPLAINT**

**FLSA COLLECTIVE ACTION
AND RULE 23 CLASS ACTION**

Plaintiff, on her own behalf and on behalf of all others similarly situated, by and through her attorneys, Wang Hecker LLP and Make the Road New York, for her collective and class action Complaint alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.     Plaintiff is a former employee of Defendant Lemons & Olives, Inc.

2.     During Plaintiff's employment by Defendant Lemons & Olives, Inc., she was subjected to severe and relentless sexual harassment by her supervisor, Defendant Tovias Valero.

3.     Defendant Lemons & Olives, Inc. never provided Defendant Valero or Plaintiff with any sexual harassment prevention training as required by New York State or New York City law, nor did it ever inform Plaintiff of the process for reporting unlawful workplace sexual harassment, nor did it ever meaningfully investigate her complaints about Defendant Valero's misconduct.

4.     Instead, shortly after Plaintiff reported Defendant Valero's misconduct to Defendant Marko Mannheim, who is one of the co-owners of Defendant Lemons & Olives, Inc.,

Defendant Marko Mannheim terminated her employment in retaliation for her protected complaints.

5.      Defendant Lemons & Olives, Inc. also brazenly misclassified Plaintiff and the class of similarly situated employees she seeks to represent, asserting frivolously that they supposedly were "independent contractors" in ostensible justification of its unlawful policy and practice of refusing to pay its workers legally required overtime and spread of hours pay and failing to provide them with legally required notices of pay and pay statements.

6.      Plaintiff now seeks to hold Defendants accountable to her and the class she seeks to represent for their reprehensible violations of their statutory rights.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").

8.      This Court has supplemental jurisdiction over the New York State and New York City claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.[1]

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because each Defendant resides in the State of New York and one or more Defendants resides in this District.

---

[1] Plaintiff has asserted claims under Title VII and the New York Executive Law before the New York State Division of Human Rights ("DHR"). Plaintiff has informed DHR that she wishes to conclude the administrative process and obtain a right to sue letter as soon as possible. Plaintiff intends to seek leave to amend her Complaint in this action to add her Title VII and New York Executive Law claims as soon as she has exhausted her administrative remedies and obtained a right to sue letter. In the meantime, Plaintiff will proceed with her factually identical New York City Human Rights Law claim, which is not subject to any administrative exhaustion requirement.

10.     This Court has personal jurisdiction over each Defendant because each Defendant is domiciled in the State of New York, because each Defendant committed unlawful acts in the State of New York, and because each Defendant caused injury to Plaintiff in the State of New York.

## THE PARTIES

11.     Plaintiff Jimena Mercedes Ugsha Quishpe is an individual who resides in the County of Queens, New York.  At all relevant times, Plaintiff was an employee of Defendant Lemons & Olives, Inc.

12.     Defendant Lemons & Olives, Inc. is a New York corporation that is headquartered in the County of Kings, New York.

13.     Defendant Tanja Mannheim is an individual who resides in the County of New York, New York.

14.     Defendant Marko Mannheim is an individual who resides in the County of New York, New York.

15.     Defendant Tovias Valero is an individual who resides in the State of New York.

## DEMAND FOR JURY TRIAL

16.     Plaintiff hereby demands a trial by jury.

## FACTS

17.     Plaintiff is 33 years old.

18.     Plaintiff lives in Queens with her husband and two young children.

19.     Plaintiff is of modest means and relies on her income to help support her family.

20.     Defendant Lemons & Olives, Inc. ("Lemons & Olives") is a catering business owned by Defendant Tanja Mannheim and her husband, Defendant Marko Mannheim.

21.     Lemons & Olives is headquartered at 98 South 4th Street in Brooklyn, where its commercial kitchen and administrative office are both located.

22.     Plaintiff became employed by Lemons & Olives as a prep cook in or about February 2023.

23.     At first, Plaintiff was employed by Lemons & Olives on a part-time basis.

24.     In or about May 2023, Plaintiff became employed by Lemons & Olives on a full-time basis.

25.     During 2023, Plaintiff's salary was $20.00 per hour.

26.     Plaintiff received a raise to $22.00 per hour in or about November 2023.

27.     At all relevant times, Plaintiff was an employee of Lemon & Olives, not an independent contractor.

28.     At no time did Plaintiff ever choose when, where, or how she performed services for Lemons & Olives.

29.     Plaintiff did not provide facilities, equipment, tools, or supplies in connection with the services she performed for Lemons & Olives.

30.     At no time did Plaintiff ever choose or set her hours of work for Lemons & Olives.

31.     At all relevant times, Lemons & Olives expected Plaintiff to provide services exclusively to Lemons & Olives.

32.     At all relevant times, Lemons & Olives set Plaintiff's rate of pay.

33.     At all relevant times, Lemons & Olives supervised Plaintiff's performance of her duties.

34.     At all relevant times, Lemons & Olives required Plaintiff to seek permission for absences from work.

35.     At no time did Plaintiff interact with clients directly.

36.     At the time of Plaintiff's hire, Lemons & Olives did not provide her with written notice of her regular rate of pay, her overtime rate of pay, how she would be paid, or her regular payday as required by the New York Wage Theft Prevention Act.

37.     Lemons & Olives never provided Plaintiff with wage statements or pay stubs containing all of the information required by the New York Wage Theft Prevention Act.

38.     Lemons & Olives never paid Plaintiff an overtime premium for the hours she worked in excess of forty per week, even though Lemons & Olives was aware that Plaintiff sometimes worked more than forty hours in a week.

39.     Lemons & Olives never paid Plaintiff a spread of hours premium for the hours she worked in excess of ten per day, even though Lemons & Olives was aware that Plaintiff sometimes worked more than ten hours in a day.

40.     Lemons & Olives never provided Plaintiff with notice of its sexual harassment prevention policy as required by New York State law.

41.     Lemons & Olives never provided Plaintiff with any sexual harassment prevention training as required by New York State and New York City law.

42.     Upon information and belief, Lemons & Olives has never provided any sexual harassment training to any of its employees as required by New York State and New York City law.

43.     In or about January 2024, Plaintiff's co-worker, Defendant Tovias Valero, was promoted to Shift Leader and began to supervise Plaintiff's work.

44.    Shortly after Defendant Valero became Plaintiff's supervisor, he began to sexually harass her.

45.    Defendant Valero frequently asked Plaintiff to go out with him or to have sex with him, routinely calling her "my love," "treasure," "chiquita linda" and other patronizing, sexualized nicknames.

46.    Defendant Valero also frequently made sexualized comments about Plaintiff's body.

47.    These unwanted advances and harassment occurred both in person, while Plaintiff and Defendant Valero were alone in the Lemons & Olives prep kitchen, as well as through text messages.

48.    For example, on February 16, 2024, Defendant Valero texted Plaintiff (in Spanish) that she was "the first woman I've said so many things like this it even freaks me out," that he "love[d]" her "even if you won't accept it," that "you already know what I feel," that "with you it is difficult to hold back because in reality I like your lips and smile a lot you are unique to me," and that "I die to touch your lips I'm not kidding or joking about this sorry for saying it but it's true."

49.    Plaintiff responded by attempting to rebuff these unwanted sexual advances, but Defendant Valero did not relent.

50.    On March 25, 2024, Defendant Valero texted Plaintiff (again in Spanish) that she "just left and I already miss your look your presence," "oh little one how I miss you," that she was "my little one pretty lipped red beautiful and juicy."

51.    Plaintiff did nothing to indicate that these obviously inappropriate advances were welcome.

6

52.    On March 26, 2024, Defendant Valero texted Plaintiff (again in Spanish) asking for "my kiss at what time" and stating that "[y]ou are my happiness you are everything my little one," "I miss you for real believe me you are a good girl a good woman a good mother that is why," "I miss you your look and smile keep me happy," "[d]ream with me," "I like you very much," "I know you feel a little for me," and "[t]he more you hate me the more you love me the way that I do you my meche my little one."

53.    Two days later, Defendant Valero texted Plaintiff (again in Spanish) "I miss you" and "[y]ou know something you are the most beautiful thing I've seen all day beautiful lips."

54.    On April 4, 2024, Defendant Valero texted Plaintiff (again in Spanish) asking her to "give me a chance no one will know only you and my heart no one else will know so that no one suspects think about it."

55.    Plaintiff tried to shut Defendant Valero down, responding "I can't work like this."

56.    Over time, Defendant Valero's misconduct escalated.

57.    In or around March 2024, Defendant Valero began to forcibly touch Plaintiff.

58.    Defendant Valero typically targeted Plaintiff when she was alone at her work station.

59.    Defendant Valero frequently touched Plaintiff's hands and whispered to her things like "I love you" or "your lips will soon touch mine."

60.    On two occasions in or around March and April 2024, Defendant Valero approached Plaintiff from behind while she was working, grabbed her hips by surprise, and whispered in her ear words to the effect of "were you dreaming of me?"

61.    When Defendant Valero touched Plaintiff, she would try to force him away by raising her hand between them and/or pushing him.

62.     Defendant Valero often responded by saying such things as "I love aggressive women like you" or "soon you'll fall for me."

63.     Defendant Marko Mannheim is one of the two co-owners of Lemons & Olives.

64.     In or about early April 2024, Plaintiff complained to Defendant Marko Mannheim about Defendant Valero's unlawful sexual harassment.

65.     Plaintiff told Defendant Marko Mannheim that Defendant Valero had been harassing her verbally, subjecting her to unwanted touching, and sending her inappropriate text messages.

66.     Defendant Marko Mannheim assured Plaintiff that he would confront Defendant Valero and address her complaints with him.

67.     After Plaintiff complained to Defendant Marko Mannheim, Defendant Valero's behavior only worsened.

68.     In May 2024, Defendant Valero cut Plaintiff's hours and stripped Plaintiff of her responsibility for ordering ingredients.

69.     Defendant Valero also continued to sexually harass Plaintiff, including by sending inappropriate texts, approaching and touching her at work, and licking his lips when he saw her.

70.     On one occasion, Defendant Valero purposefully grazed Plaintiff's breasts with his body, claiming in a mocking tone that it had been an accident.

71.     Plaintiff repeatedly implored Defendant Valero to stop harassing her, but he did not.

72.     Plaintiff became more and more physically aggressive, and he required her to begin working in the early morning before the other workers arrived.

73.     On June 3, 2024, Plaintiff texted Defendant Marko Mannheim to tell him that Defendant Valero had cut her hours and stripped her of her authority to place orders, and she asked Defendant Marko Mannheim to meet.

74.     The next day, Plaintiff spoke with Defendant Marko Mannheim in Defendant Marko Mannheim's office after work.

75.     Plaintiff told Defendant Marko Mannheim about Defendant Valero's continued harassment.

76.     Defendant Marko Mannheim said, once again, that he would talk to Defendant Valero.

77.     Defendant Marko Mannheim did not criticize Plaintiff's work performance during this meeting.  To the contrary, she expressly asked him if her work was satisfactory, and he responded that it was.

78.     Two days later, on June 6, 2024, Defendant Marko Mannheim suddenly fired Plaintiff, telling her that he needed to make sure there were no problems with the team.

79.     Plaintiff protested that terminating her was unfair and that she had never received a complaint about her work.

80.     Defendant Marko Mannheim responded by asking her to understand that it was his business and that it had to run smoothly.

81.     On June 7, 2024, Defendant Marko Mannheim texted Plaintiff to come get her final paycheck.

82.     Plaintiff was too afraid to go to her former place of work because of the potential for a confrontation with Defendant Valero, and she therefore had a co-worker pick up her final paycheck for her

83.    Plaintiff's termination was not performance-based.

84.    At all relevant times, Plaintiff's performance was satisfactory.

85.    Consistent with the fact that Plaintiff's termination was not performance-based, Defendant Marko Mannheim offered to recommend her for work to a company-affiliated chef.

86.    Lemons & Olives terminated Plaintiff's employment because she complained about being sexually harassed by Defendant Valero.

87.    On June 12, 2024, Plaintiff filed a police report about the sexual harassment and unwanted physical assaults she experienced at the hands of Defendant Valero    .

88.    Defendant Valero's unlawful sexual harassment of Plaintiff has caused her to suffer severe emotional distress.

89.    Plaintiff's unlawful termination by Lemons & Olives has caused her to suffer severe emotional distress.

90.    Plaintiff's unlawful termination by Lemons & Olives has caused her to suffer economic loss.

91.    During the administrative proceedings before DHR (*see* footnote 1, *supra*), Lemons & Olives asserted four arguments, none of which has merit.

92.    First, Lemons & Olives blames Plaintiff for failing to avail herself of its alleged "HR" channel.

93.    But the alleged "dedicated HR" officer of Lemons & Olives, Kathleen Rosentel, is just its Operations Manager.

94.    Ms. Rosentel's LinkedIn page does not suggest she has any human resources background, training, or experience.

95.     Ms. Rosentel was never identified to Plaintiff as the putative "dedicated HR" officer of Lemons & Olives.

96.     Lemons & Olives never provided Plaintiff with any sexual harassment prevention training and never provided her with any information about how to lodge a complaint.

97.     Nor did Defendant Marko Mannheim say anything about going through "HR" when Plaintiff sensibly brought her complaints about Defendant Valero directly to him.

98.     In an August 19, 2024 affidavit, Ms. Rosentel swore unequivocally that there supposedly is "no evidence" supporting Plaintiff's claims of unlawful sexual harassment.

99.     Ms. Rosentel clearly made no effort to conduct a meaningful investigation, because even a cursory investigation into Plaintiff's claims would have adduced strong corroborating evidence, including the text messages referenced above.

100.    Second, Lemons & Olives asserted before DHR that Plaintiff's hours were not reduced after she complained to Defendant Marko Mannheim about Defendant Valero's misconduct in April 2024.

101.    That is false.

102.    In any event, although cutting Plaintiff's hours was itself actionable retaliation, Lemons & Olives went even further by terminating Plaintiff's employment almost immediately after her second complaint to Defendant Marko Mannheim    .

103.    The temporal proximity between Plaintiff's second complaint and her termination, which is corroborated by Plaintiff's June 3, 2024 text to Defendant Marko Mannheim, is damning.

104.    Lemons & Olives has provided no contemporaneous evidence supporting its specious contention that Plaintiff was a poor performer.

105.    Third, Lemons & Olives asserted before DHR that Defendant Valero was not Plaintiff's supervisor.

106.    That is false.

107.    Defendant Valero was promoted to Shift Leader in January 2024.

108.    Defendant Valero became the supervisor of the kitchen and began to direct Plaintiff's activities.

109.    Defendant Valero also began to assert control over Plaintiff's schedule.

110.    Fourth, Lemons & Olives asserted that Plaintiff's employment supposedly was fired for performance reasons.

111.    That is false.

112.    Lemons & Olives terminated Plaintiff's employment because she complained about being sexually harassed by Defendant Valero.

113.    Defendant Valero's unlawful sexual harassment of Plaintiff has caused her to suffer severe emotional distress.

114.    Plaintiff's unlawful termination by Lemons & Olives has caused her to suffer severe emotional distress.

115.    Plaintiff's unlawful termination by Lemons & Olives has caused her to suffer economic loss.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

116.    Plaintiff brings the First Claim for Relief below as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b) on behalf of all non-exempt service employees who were employed by Lemons & Olives on or after the date that is three years before the filing of the Complaint in this action (the "FLSA Collective Plaintiffs").

117.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to the policy and practice of Lemon & Olives of willfully failing and refusing to pay them legally required overtime pay.

118.    The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).

119.    The FLSA Collective Plaintiffs are readily ascertainable.

120.    The names and addresses of the FLSA Collective Plaintiffs are readily available from the Defendants.

121.    Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last addresses known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

122.    Plaintiff brings the Second Claim for Relief below pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf all non-exempt service employees who were employed by Lemons & Olives on or after the date that is six years before the filing of the Complaint in this action (the "Class Period").

123.    All such persons are referred to herein as members of the "Class" or "Class Members."

124.    The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from records maintained by Lemons & Olives.

125.    The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from records maintained by Lemons & Olives.

126.    The names and addresses of the Class Members are readily available from Defendants.

127.    Notice can be provided by means permissible under Rule 23.

128.    The proposed Class is so numerous that joinder of all Class Members would be impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

129.    Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty members of the Class.

130.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.

131.    All the Class members were subject to the same corporate policy and practice of Lemons & Olives, as alleged herein, of failing to pay overtime and spread of hours compensation and failing to provide adequate wage notices and statements.

132.    The company-wide policies and practices of Lemons & Olives complained about herein affected all Class Members similarly.

133.    Plaintiff is able to fairly and adequately represent and protect the interests of the Class and has no interests antagonistic to the Class.

134.    Plaintiffs are represented in this action by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

135.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against their employer.

136.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

137.    Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.

138.    On the other hand, important public interests will be served by addressing these claims as a class action.

139.    The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

140.    The issues in this action can be decided by means of common, class-wide proof.

141.    In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

142.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual class members, including:

     a)    Whether Lemons & Olives employed Plaintiff and the Class Members within the meaning of the New York law;

     b)    The policies and practices of Lemons & Olives regarding classifying workers as employees or independent contractors;

     c)    Whether Lemons & Olives properly compensated Plaintiff and the Class Members for overtime hours and spread of hours shifts; and

d)      Whether Lemons & Olives provided Plaintiff and the Class
members with adequate wage notices and wage statements.

## FIRST CLAIM FOR RELIEF
### (FLSA Overtime Violations)
### 29 U.S.C. § 201, *et seq.*
**Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs
Against Defendants Lemons & Olives, Tanja Mannheim, and Marko Mannheim**

143.    Plaintiff, on behalf of herself and all other FLSA Collective Plaintiffs, realleges

and incorporates by reference all previous paragraphs of this Complaint.

144.    At all relevant times, Defendant Lemons & Olives has been, and continues to be,

an "employer" engaged in interstate "commerce" and/or in the production of "goods" for

"commerce," within the meaning of FLSA, 29 U.S.C. § 203.

145.    Throughout the statute of limitations period covered by these claims, Plaintiff and

the other FLSA Collective Plaintiffs at times worked in excess of forty hours per workweek.

146.    At all relevant times, Defendant Lemons & Olives operated under a policy and

practice of willfully failing and refusing to pay Plaintiff the Class Members the appropriate

overtime rate for work in excess of forty hours per workweek.

147.    At all relevant times, Lemon & Olives willfully, regularly, and repeatedly failed

to pay Plaintiff and the FLSA Collective Plaintiffs at the required overtime rates for hours

worked in excess of forty hours per workweek.

148.    The FLSA extends liability to any "employer" who violates the statute's

overtime provisions.  *See* 29 U.S.C. § 216(b), (e)(2).

149.    An "employer" is defined as "any person acting directly or indirectly in the

interest of an employer."  *Id.* § 203(d).

16

150.    Defendant Marko Mannheim and Defendant Tanja Mannheim were each Plaintiff's employers, and therefore are subject to personal liability.

151.    Defendant Marko Mannheim and Defendant Tanja Mannheim each had the power to hire and fire employees.

152.    Defendant Marko Mannheim and Defendant Tanja Mannheim each supervised and controlled employee work schedules and/or conditions of employment.

153.    Defendant Marko Mannheim and Defendant Tanja Mannheim each determined the rate and method of payment of the employees.

154.    Defendant Marko Mannheim and Defendant Tanja Mannheim each maintained employment records.

155.    Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
**(New York Labor Law Overtime Violations)**
**N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4**
**Brought by Plaintiff on Behalf of Herself and the Class**
**Against Defendants Lemons & Olives, Tanja Mannheim, and Marko Mannheim**

156.    Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all previous paragraphs.

157.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty hours in any workweek.

158.     Throughout the Class Period, Defendant Lemons & Olives willfully, regularly, and repeatedly failed to pay Plaintiff and the Class Members at the required overtime rate for hours worked in excess of forty hours per workweek.

159.     Defendant Marko Mannheim and Defendant Tanja Mannheim were each Plaintiff's employers pursuant to New York Labor Law § 651(6) and therefore are subject to personal liability.

160.     Defendant Marko Mannheim and Defendant Tanja Mannheim each had the power to hire and fire employees.

161.     Defendant Marko Mannheim and Defendant Tanja Mannheim each supervised and controlled employee work schedules and/or conditions of employment.

162.     Defendant Marko Mannheim and Defendant Tanja Mannheim each determined the rate and method of payment of the employees.

163.     Defendant Marko Mannheim and Defendant Tanja Mannheim each maintained employment records.

164.     As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**THIRD CLAIM FOR RELIEF**
**(New York Spread of Hours Violations)**
**N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6**
**Brought by Plaintiff on Behalf of Herself and the Class**
**Against Defendants Lemons & Olives, Tanja Mannheim, and Marko Mannheim**

165.     Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all previous paragraphs.

166.    Plaintiff and the Class Members at times had workdays that lasted more than ten hours.

167.    Defendants Lemons & Olives willfully and intentionally failed to compensate Plaintiff and the Class Members one hour's pay at the basic New York minimum hourly wage rate for all workdays that spanned more than ten hours as required by New York law.

168.    Defendant Marko Mannheim and Defendant Tanja Mannheim were each Plaintiff's employers pursuant to New York Labor Law § 651(6) and therefore are subject to personal liability.

169.    Defendant Marko Mannheim and Defendant Tanja Mannheim each had the power to hire and fire employees.

170.    Defendant Marko Mannheim and Defendant Tanja Mannheim each supervised and controlled employee work schedules and/or conditions of employment.

171.    Defendant Marko Mannheim and Defendant Tanja Mannheim each determined the rate and method of payment of the employees.

172.    Defendant Marko Mannheim and Defendant Tanja Mannheim each maintained employment records.

173.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the Class are entitled to an award of damages, including compensatory damages and liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### FOURTH CLAIM FOR RELIEF
**(New York Wage Notice and Statement Requirements)**
**N.Y. Lab. L. §§ 195, 198**
**Brought by Plaintiff on Behalf of Herself and the Class**
**Against Defendants Lemons & Olives, Tanja Mannheim, and Marko Mannheim**

174.    Plaintiff, on behalf of herself and the Class members, realleges and incorporates by reference all previous paragraphs.

175.    Defendants did not provide Plaintiff and the members of the Class with wage notices and statements that contained the required information under N.Y. Lab. Law § 195.

176.    As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### FIFTH CLAIM FOR RELIEF
**(Sexual Harassment)**
**New York City Human Rights Law, ACNY § 8-107(2)**
**Brought by Plaintiff Against Defendants Lemons & Olives, Tanja Mannheim,  Marko Mannheim and Tovias Valero**

177.    Plaintiff realleges and incorporates by reference all previous paragraphs.

178.    Lemon & Olives was Plaintiff's employer as defined in ACNY § 8-102.

179.    Plaintiff was an employee of Lemon & Olives as defined in ACNY § 8-102.

180.    Defendant Valero repeatedly subjected Plaintiff to unlawful workplace sexual harassment.

181.    By doing so, Defendant Valero discriminated against Plaintiff in the terms, conditions, and privileges of her employment.

182.    At all relevant times, Defendant Valero was Plaintiff's supervisor.

183.    At all relevant times, Defendant Valero exercised managerial or supervisory responsibility over Plaintiff.

184.    Defendants Lemon & Olives and Marko Mannheim knew of Defendant Valero's discriminatory conduct and acquiesced in such conduct or failed to take immediate and appropriate corrective action.

185.    Defendants Lemon & Olives and Marko Mannheim should have known about Defendant Valero's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

186.    As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial.

187.    Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages.

### SIXTH CLAIM FOR RELIEF
**(Retaliation)**
**New York City Human Rights Law, ACNY § 8-107(7)**
**Brought by Plaintiff Against Defendant Lemons & Olives, Tanja Mannheim, and Defendant Marko Mannheim, Defendant Tovias Valero**

188.    Plaintiff realleges and incorporate by reference all previous paragraphs.

189.    Defendant Lemon & Olives was Plaintiff's employer as defined in ACNY § 8-102.

190.    Plaintiff was an employee of Lemon & Olives as defined in ACNY § 8-102.

191.    Plaintiff reported to Defendants Lemon & Olives and Marko Mannheim that Defendant Valero had subjected her to unlawful workplace sexual harassment.

192.    Plaintiff retaliated against Plaintiff for reporting Defendant Valero's misconduct by cutting her hours and then terminating her employment.

193.    As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial.

194.    Defendants' conduct was willful, wanton, and malicious, warranting an award of punitive damages

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs and the members of the Class, to:

A.    Designate of this action as a collective action on behalf of the FLSA Collective Plaintiffs and order the issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designate Plaintiff as Representative of the FLSA Collective Plaintiffs;

C.    Certify this action as a class action pursuant to F.R.C.P. 23;

D.    Appoint Plaintiff's counsel to serve as class counsel;

E.    Declare that Defendants' policies and practices with respect to the payment of wages are unlawful;

F.    Award compensatory damages;

G.    Award statutory liquidated damages;

H.    Award reasonable attorneys' fees and costs, including expert fees;

I.    Award pre-judgment and post-judgment interest, as provided by law; and

J.    Award such other and further legal and equitable relief as this Court deems just

and proper.

DATED:  New York, New York
             November 19, 2024

WANG HECKER LLP


By:    /s/ Eric Hecker
            Eric Hecker
            Jazly Liriano
            305 Broadway, Suite 607
            New York, New York 10007
            (212) 620-2602

            Nathalia Varela
            David Orkin
            Make the Road New York
            301 Grove Street
            Brooklyn, NY 11237
            (718) 565 8500

            *Attorneys for Plaintiff*

23